**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3659-20

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

ALIONY PEREZ,

    Defendant-Respondent.

_____

Submitted December 14, 2021 – Decided March 8, 2022

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 13-08-0744.

William A. Daniel, Union County Prosecutor, attorney for appellant (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

The Law Offices of Michael P. McGuire, LLC, attorneys for respondent (Michael P. McGuire, on the brief).

PER CURIAM

In this matter, we consider the July 22, 2021 order granting defendant's motion to dismiss the indictment for lack of a speedy trial. Because the trial court conducted a thorough and factually supported analysis of the Barker v. Wingo[1] factors, we affirm.

In May 2013, defendant was arrested on several charges in Union County and released after posting bail.[2] He was indicted in August 2013 of second-degree unlawful taking of a police weapon, N.J.S.A. 2C:12-11; third-degree resisting arrest, N.J.S.A. 2C:29-2(a); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a).

Arraignment, originally scheduled for September, was postponed until October 7, 2013. Defendant failed to appear on that date and a bench warrant was issued. Defendant appeared before the court on October 21, 2013 and was arraigned. Defense counsel requested an adjournment of a November scheduled court appearance. During defendant's next court appearance on December 4, he was intoxicated and the court rescheduled for a date later that month. The court then adjourned the matter until January 13, 2014, for a plea or trial memo.

---

[1] 407 U.S. 514, 529-30 (1972).

[2] At the time of his arrest, defendant was under indictment in both Essex and Morris Counties on multiple theft and burglary charges.

A-3659-20

Defendant failed to appear on that date. A new court date was set for January 28, 2014. Defendant failed to appear a second time and a bench warrant was issued.

Seven months later, defendant was arrested in Tennessee on August 11, 2014, on charges of burglary, theft, and being a fugitive from justice. Union County lodged a detainer and requested extradition. On August 26, 2014, defendant was arrested and charged with federal crimes relating to the interstate transportation of stolen goods. Tennessee subsequently dismissed its state charges. Court documents reflected an entry that Tennessee received documentation from New Jersey declining to extradite defendant.[3]

Defendant was convicted of the federal charges and sentenced in August 2016 to two sixty-month concurrent terms of incarceration, followed by three years of supervised release. Union County did not lodge a detainer with the federal prison. After completing his custodial sentence, defendant was released on supervision on January 22, 2019. He was subsequently arrested on December 16, 2020 in Miami on the outstanding bench warrant from Morris County.

---

[3] The documentation did not specify which of the counties declined to extradite at that point.

A-3659-20

Morris County extradited defendant from Florida on December 30, 2020. That same day, Union County filed a detainer with Morris County.

On January 6, 2021, defendant was released from Morris County on non-monetary conditions. He was then arrested on the bench warrant from Essex County. Union County issued a detainer to Essex County. Defendant appeared in Union County on his outstanding charges on February 9, 2021 and was released on bail.

Defendant moved to dismiss the indictment for lack of a speedy trial. In a written decision, the trial court analyzed each of the Barker factors and concluded the factors weighed in favor of dismissal. Therefore, the court granted defendant's motion on July 22, 2021, and dismissed the indictment for lack of a speedy trial.

On appeal, the State raises a single point for our consideration.

POINT I

THE TRIAL COURT ERRED BY DISMISSING THE INDICTMENT BECAUSE DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS NOT VIOLATED.

On appeal, we defer to the trial court's factual findings underpinning its legal conclusions. State v. McNeil-Thomas, 238 N.J. 256, 271 (2019). Our review of the court's legal conclusions is de novo. State v. Dorff, 468 N.J. Super.

4

633, 644 (App. Div. 2021). A trial judge's determination that a defendant's right to a speedy trial was violated will only be reversed if that determination is clearly erroneous. State v. Tsetsekas, 411 N.J. Super. 1, 10 (App. Div. 2009).

The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and imposed on the states through the Due Process Clause of the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967). "The constitutional right . . . attaches upon defendant's arrest." State v. Fulford, 349 N.J. Super. 183, 190 (App. Div. 2002) (citing State v. Szima, 70 N.J. 196, 199-200 (1976)). As a matter of fundamental fairness, excessive delay in completing a prosecution may qualify as a violation of a defendant's constitutional right to a speedy trial. State v. Farrell, 320 N.J. Super. 425, 445-46 (App. Div. 1999) (citing State v. Gallegan, 117 N.J. 345, 354-55 (1989)). After all, "'[a] defendant has no duty to bring himself to trial; the State has that duty . . . .'" State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977) (quoting Barker, 407 U.S. at 527).

In Barker, the United States Supreme Court announced a four-part test to determine when a delay infringes upon a defendant's due process rights. 407 U.S. at 530. Courts must consider and balance the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the

defendant." Ibid. Our Supreme Court adopted the Barker test in Szima, 70 N.J. at 200-01.

No single factor is a "necessary or sufficient condition to the finding of a deprivation of the right [to] a speedy trial." Barker, 407 U.S. at 533. Rather, the factors are interrelated, and each must be considered in light of the relevant circumstances of each particular case. Ibid. In an analysis of a speedy trial challenge, a trial court must weigh the "'societal right to have the accused tried and punished'" and a defendant's right "'to be prosecuted fairly and not oppressively.'" State v. Dunns, 266 N.J. Super. 349, 380 (App. Div. 1993) (quoting State v. Farmer, 48 N.J. 145, 175 (1966)).

The burden lies on defendant to show that the Barker factors, on balance, weigh in favor of dismissal. See State v. Berezansky, 386 N.J. Super. 84, 99 (App. Div. 2006). However, because the analysis requires balancing, "when the delay in concluding a trial is excessively long by any measure . . . , the burden upon defendant to satisfy the other factors is correspondingly diminished." Farrell, 320 N.J. Super. at 453.

We now consider the trial court's application of these principles. The first factor—length of delay—is not contested. The State concedes that seven years

A-3659-20

between indictment and trial is an excessive delay, triggering a <u>Barker</u> analysis. That factor weighed in defendant's favor.

In addressing the second <u>Barker</u> factor—the reason for the delay—the court stated that,

> the State offers no reason for the delay. As appropriately conceded by the prosecutor at argument, the State has not submitted any evidence under <u>R[ul]e</u> 1:6-6 from a person with knowledge as to what happened here and why it occurred. The State proceeds only upon the documents submitted and argument. Because the State has an obligation to come forward with a justification, and has not, the second <u>Barker</u> factor weighs heavily in favor of the [d]efendant.

The State asserts the trial court erred in attributing too much blame to it for the delay in prosecution, specifically in the court's finding that the State was responsible for the time after defendant was released and living in Florida under supervision, and that the court placed too much weight on the State's failure to lodge a detainer while defendant was incarcerated. The State asserts that because defendant was living in Florida, and not within a custodial institution, New Jersey could not compel his appearance until Florida authorities enforced any of defendant's outstanding New Jersey bench warrants. The State concedes it could have filed a detainer and requested extradition during defendant's federal incarceration but offers no explanation as to why it failed to do so.

7

To analyze the reasons for delay, courts should "divid[e] the time into discrete periods of delay," and determine whether each delay was attributable to "the State, defendant, or the court system."  State v. May, 362 N.J. Super. 572, 596 (App. Div. 2003).  Even where the State or court system is at fault, different levels of culpability should weigh differently in the balance.  See Barker, 407 U.S. at 531.

Here, the trial judge established four discernable periods of delay to apportion responsibility between the State and defendant: (1) defendant's fugitive status from January 18, 2014, until his arrest in Tennessee on August 11, 2014; (2) defendant's time in Tennessee awaiting federal sentencing; (3) defendant's imprisonment for federal charges from August 18, 2016 until his release on January 22, 2019; and (4) his supervised time in Florida until his arrest on December 16, 2020.

The trial court found, and defendant conceded, that defendant was responsible for the delay under the first two periods of time.  The court found the State was responsible for the delay incurred under the last two periods.  The trial court held that the State was required to explain or justify the delay of four years between defendant's sentencing on the federal charges and his eventual

arrest in Miami, found the State failed to provide an explanation, and weighed it against the State in the balance.

It is the State's duty to exercise reasonable diligence in prosecuting defendants. See Doggett v. United States, 505 U.S. 647, 656 (1992). Here, the State did not lodge a detainer with the custodial institution where defendant served his federal sentence, so the institution did not notify Union County when defendant completed his sentence and was being released.

As the trial judge stated, Union County has not provided any explanation for its failure to properly lodge a detainer or run any checks in its systems to search for defendant. Although reasonable diligence does not require "heroic efforts" to be made, it does require some effort. Rayborn v. Scully, 858 F.2d 84, 90 (2d Cir. 1988). As our Court stated in State v. Cahill, 213 N.J. 253, 274 (2013), if the State can offer no explanation for delay, it "weighs heavily against the State."

Moreover, the purpose behind the Interstate Agreement on Detainers (IAD), codified in New Jersey as N.J.S.A. 2A:159A-1 to -15, is to prevent the circumstances that occurred here. The IAD provides a means for states that have outstanding indictments on a person incarcerated in another state to acquire custody of the person and bring them to trial. N.J.S.A. 2A:159A-3. If Union

9

County had properly lodged a detainer, defendant could have demanded a trial within 180 days. Or the Union County prosecutor could have initiated proceedings for the temporary custody of defendant to resolve the outstanding indictment. N.J.S.A. 2A:159A-4. Therefore, the four year delay between defendant's sentencing hearing in Tennessee and his eventual arrest in Florida falls squarely upon the State. The trial judge did not err in finding the reasons for the delay factor weighed heavily against the State.

In turning to the third Barker prong, the trial court found defendant promptly asserted his right after his arrest in Florida. The judge stated that because the State failed to "actively pursue these charges during the four years [d]efendant was in federal custody and no efforts [were made] to contact [d]efendant during the approximately two years since his release from federal custody, this court will not find that [d]efendant was somehow attempting to actively evade his obligations" considering he was "readily locatable—had the State been attentive to the case." Therefore, the court found the factor weighed in defendant's favor.

The State asserts that this factor should weigh in favor of the State because defendant did not assert his speedy trial right at any time during his incarceration in Tennessee or while serving his sentence at a federal prison.

We reject these arguments. Because the State did not lodge a detainer with the federal facility, the IAD procedure was not triggered. As for the Tennessee state charges, they were dismissed. Therefore, the IAD was not relevant since it is only applicable to a defendant who is serving a term of imprisonment. N.J.S.A. 2A:159A-3. The state seeking to lodge a detainer cannot do so until a defendant has been sentenced and is incarcerated. Carchman v. Nash, 473 U.S. 716, 720-21 (1985). We see no reason to disturb the judge's determination that this factor weighed in favor of defendant.

In considering the final prong of the Barker test, prejudice to the defendant, the trial judge found defendant had not suffered any identifiable prejudice. Therefore, this prong is not at issue before this court.

In looking at the totality of the circumstances, as we must, we are satisfied the trial court properly balanced the Barker factors and found the State fell short in its responsibility to prosecute defendant on the outstanding indictment. Although we acknowledge that "'in the administration of justice, dismissal must be a recourse of last resort,'" Farrell, 320 N.J. Super. at 447 (quoting State v. Prickett, 240 N.J. Super. 139, 147 (App. Div. 1990)), so too must we consider a defendant's right to be prosecuted "fairly and not oppressively." Dunns, 266 N.J. Super. at 380 (quoting Farmer, 48 N.J. at 175).

11

The State does not dispute the total delay in prosecution was excessively long. And the trial court agreed the initial delay was due to defendant absconding from this state. But, for four years defendant was in federal custody and available for extradition. When he was released from prison, defendant lived freely, securing employment, and remaining under federal monitoring. The State has not offered any explanation for the additional two years it did not pursue and locate defendant to prosecute the outstanding charges against him. Therefore, the "governmental interest in prosecution has been outweighed by defendant's individual right to a speedy trial." Tsetsekas, 411 N.J. Super. at 14 (citing Farrell, 320 N.J. Super. at 453).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12